IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE OFFICIAL STANFORD INVESTORS COMMITTEE, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:13-CV-0760-N |
| ANTIGUA AND BARBUDA, | § § § | |
| Defendant. | § | |

# ORDER

This Order addresses Defendant Antigua and Barbuda's ("Antigua") motion to dismiss for lack of jurisdiction [11]. The Court grants the motion in part and denies it in part.

## I. THE PARTIES' DISPUTE

This action arises from the Ponzi scheme perpetrated by R. Allen Stanford, his associates, and various entities under his control (collectively, "Stanford"). The facts associated with Stanford's scheme are well established, *see, e.g.*, *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 188–89 (5th Cir. 2013), and will not be recounted in great depth here. As part of the U.S. Securities and Exchange Commission's ("SEC") ongoing proceedings against Stanford, this Court appointed Ralph S. Janvey (the "Receiver") to serve as receiver for the Stanford entities. *See generally* Second Am. Order Appointing Receiver, July 19, 2010 [1130] (the "Receivership Order"), *in SEC v. Stanford Int'l Bank Ltd.*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009). The Receiver was tasked with, among other things, bringing actions on behalf of the Stanford

ORDER – PAGE 1

entities in receivership to recover assets for distribution to Stanford's defrauded investors. *See id.* at 5.

Plaintiff Official Stanford Investors Committee ("OSIC") brings this action both on behalf of the Receiver, and in its own capacity as representative for the Stanford investors.[1] OSIC maintains claims against Antigua based on its alleged facilitation of Stanford's scheme. OSIC generally alleges that Antigua provided Stanford with a regulatory safe haven where he was able to operate his offshore bank, Stanford International Bank Limited ("SIBL"), insulated from the outside threat of detection. According to OSIC, Antigua and its representatives entered into a series of loans, bribes, and other corrupt arrangements whereby Stanford obtained an increasing amount of leverage and control over the Antiguan government and its financial regulatory sector. Crucial to Stanford's scheme were the efforts of the Financial Services Regulatory Commission of Antigua ("FSRC"). OSIC contends the FSRC and its administrator Leroy King assisted Stanford in evading regulation and in misleading external regulatory inquiries. Stanford was able to use his position of power to weaken Antigua's regulatory regime and use Antigua's own regulators against entities like the SEC.

Based on these allegations, OSIC asserts claims for breach of contract, anticipatory breach of contract, avoidance of fraudulent transfers under the Texas Uniform Fraudulent

---

[1] OSIC is a body tasked with representing Stanford investors and has similar rights and responsibilities as a bankruptcy creditors' committee appointed under Title 11 of the United States Code. *See generally* Order, Aug. 10, 2010 [1149], *in SEC v. Stanford Int'l Bank, Ltd.*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009).

ORDER – PAGE 2

Transfer Act, TEX. BUS. & COM. CODE ANN. §§ 24.001–24.013 ("TUFTA"), aiding and abetting/participation in a fraudulent scheme, aiding and abetting/participation in breaches of fiduciary duty, civil conspiracy, and aiding and abetting violations of the Texas Securities Act ("TSA"). Antigua, in turn, moves to dismiss under Rule 12(b)(1) and the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602–1611 ("FSIA"), arguing this Court lacks subject matter jurisdiction over OSIC's claims against it. In the alternative, Antigua seeks dismissal under Rule 12(b)(6) for failure to state a claim.

## II. THE FOREIGN SOVEREIGN IMMUNITIES ACT

### A. Rule 12(b)(1) Standard

Under the Constitution, a federal court may decide only actual "Cases" or "Controversies." U.S. CONST. art. III, § 2. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). "The FSIA provides the sole source of subject matter jurisdiction in suits against a foreign state." *Dale v. Colagiovanni*, 443 F.3d 425, 428–29 (5th Cir. 2006) (citing *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989)).

A court deciding a Rule 12(b)(1) motion may consider matters of fact which may be in dispute. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). However, under the FSIA, "[i]f the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations,

then the district court should take the plaintiff's factual allegations as true and determine whether they bring the case within any of the exceptions to immunity invoked by the plaintiff." *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) (citing *Saudi Arabia v. Nelson*, 507 U.S. 349, 351, 361 (1993)).

### B. The FSIA Legal Standard

As mentioned, "[t]he FSIA provides the sole source of subject matter jurisdiction in suits against a foreign state." *Dale*, 443 F.3d at 428–29. "The general rule under the FSIA is that foreign states are immune from the jurisdiction of the United States Courts." *Id.* (internal quotation marks omitted).[2] "However, a district court can exercise subject matter jurisdiction over a foreign state if one of the statute's exceptions apply." *Id.* (internal quotation marks omitted).

As the party asserting immunity, Antigua bears the burden of persuasion. *See United States v. Moats*, 961 F.2d 1198, 1205 (5th Cir. 1992). However, once Antigua makes a prima facie showing of immunity, the burden shifts to OSIC to demonstrate that one of the exceptions to immunity applies. *Id.* If OSIC can make this demonstration, then Antigua must show that the exception does not apply. *Id.* Because the parties agree that Antigua qualifies as a foreign state, the Court moves to determine whether OSIC can establish an exception applies.

---

[2]OSIC does not dispute that Antigua qualifies as a foreign state.

### *C. The "Waiver" Exception to the FSIA*

OSIC argues Antigua has waived its immunity with regard to two loan contracts on which OSIC's claims are based. FSIA immunity does not apply in any case "in which the foreign state has waived its immunity either explicitly or by implication . . . ." 28 U.S.C. § 1605(a)(1). Courts have found waiver where the foreign state agrees contractually to waive immunity with regard to claims arising from the contract. *See, e.g.*, *Capital Ventures Int'l v. Republic of Argentina*, 552 F.3d 289, 293–95 (2d Cir. 2009); *Walker Int'l Holdings Ltd. v. Republic of Congo*, 395 F.3d 229, 234 (5th Cir. 2004).

Two of the loan contracts on which OSIC's breach of contract claims are based contain waiver provisions. The first, a loan for $40 million (the "$40 Million Loan") provides in pertinent part:

> Borrower hereby irrevocably and unconditionally waives any and all defenses it may possess based in whole or in part upon the doctrine of sovereign immunity with respect to the Loan, the Note, this Loan Agreement and the agreements, instruments and transactions contemplated thereby.

App. OSIC's Resp. Def.'s Mot. Dismiss 42 [18] ("OSIC App."). The $40 Million Loan Agreement also contains a "Governing Law; Service of Process; Venue" clause (the "Governing Law Clause"), which provides:

> This agreement shall be governed by, and construed and enforced in accordance with, the laws of England and Wales, irrespective of conflict of laws principles . . . . Borrower hereby irrevocably agrees that all actions or proceedings in any way, manner or respect arising out of or from or related to this Agreement shall be litigated only in courts having situs within England and Wales.

*Id.* at 40.

As to a second loan for $31 million (the "$31 Million Loan"), the Antiguan act of parliament approving the loan provides:

> This commitment letter is, and the Loan and Loan documentation shall be, governed by the laws of Antigua and Barbuda. For any dispute or disagreement relating to this letter, the Loan or the Loan documentation, the Borrower submits to the nonexclusive jurisdiction of the courts of Antigua and Barbuda, waives any claim that such court is an inconvenient forum, waives any claim or right to immunity the Borrower or its property may now or hereafter enjoy . . . .

*Id.* at 55–56.

***1. Antigua Has Waived Immunity For the $40 Million Loan.*** – The loan agreement executed in connection with the $40 Million Loan provides an explicit and unconditional waiver of sovereign immunity. *See id.* at 42. Antigua points the Court to the above-cited Governing Law Clause, which indicates the governing law and appropriate forum for litigation concerning the $40 Million Loan lies in England or Wales. The plain language of the Governing Law Clause, however, does not address the issue of immunity. Rather, it addresses issues concerning choice of law, service of process, and venue. Moreover, the Governing Law Clause is physically separate and apart from the loan agreement's waiver clause – the Governing Law Clause and the waiver clause make no mention of one another. While Antigua may very well have objections to the continued prosecution of OSIC's suit in this Court based on the Governing Law Clause, those objections are not jurisdictional. *See, e.g.*, *United States v. Calderon*, 243 F.3d 587, 590 (2d Cir. 2001) ("Venue is not jurisdictional, however."). The $40 Million Loan explicitly waives all claims to sovereign

immunity without reference to a particular nation's courts. Antigua has waived its immunity to OSIC's contract claims based on the $40 Million Loan.

***2. Antigua Has Waived Immunity for the $31 Million Loan.*** – The issue of waiver is closer on the $31 Million Loan. Although the act of parliament authorizing the loan "waives any claim or right to immunity the Borrower or its property may now or hereafter enjoy[,]" this language immediately follows a clause providing that "Borrower submits to the nonexclusive jurisdiction of the courts of Antigua and Barbuda . . . ." *Id.* at 55–56. Whereas the $41 Million Loan's Governing Law Clause and waiver clause were separate, independent provisions in the contract, here the waiver clause and submission to jurisdiction clause are within the same provision. A question thus arises as to whether the waiver provision must be read to apply only when suit is brought in Antigua and Barbuda.

The Court finds significant the order of the clauses in the $31 Million Loan, and the language used. Antigua explicitly consents to jurisdiction in the courts of Antigua and Barbuda, and then waives any claim that such forum is an inconvenient forum. The next clause of this provision is the waiver clause, which, without mentioning the courts of Antigua and Barbuda again, "waives any claim or right to immunity the Borrower or its property may now or hereafter enjoy." *Id.* The document thus provides a qualified waiver of forum non conveniens objections, explicitly providing such waiver is only effective in Antiguan courts. The immunity waiver, however, provides no such qualification. If Antigua intended to waive immunity only in the Antiguan courts, the provision could have stated something like "waives any claim or right to immunity *in such courts* the Borrower or its property may now

or hereafter enjoy."  The Court thus finds that Antigua waived its claim to immunity with regard to OSIC's contract claims based on the $31 Million Loan.

### D. The "Commercial Activities" Exception to the FSIA

In addition to the loan-based claims discussed above, for which OSIC was able to provide contractual evidence of waiver, OSIC asserts its claims generally fall under the commercial activities exception to the FSIA.

The commercial activities exception to the FSIA consists of three separate clauses. OSIC argues for application of the third clause, which lifts FSIA immunity in any case "in which the action is based . . . upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2).  Under section 1605(a)(2)'s third clause, the Court conducts a three-part inquiry to determine whether this lawsuit is (1) based on an act outside the territory of the United States; (2) that was taken "in connection with a commercial activity" of Antigua outside the United States; and (3) that caused a "direct effect" in the United States.  *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 611 (1992) (internal quotation marks omitted).  Antigua challenges all three elements of this analysis.[3]

---

[3]The parties' arguments as to the commercial activities exception closely mirror those raised and addressed in this Court's Order, June 26, 2015 [71], *in Frank v. The Commonwealth of Antigua & Barbuda*, Civil Action No. 3:09-CV-2165-N (N.D. Tex. filed Nov. 13, 2009) (the "Frank Order").  The Court's analysis here is also substantially similar.

ORDER – PAGE 8

***1. Plaintiffs' Suit Is Based Upon An Act Outside the United States.*** – As in the Frank Order, Antigua here argues that it cannot be held liable for the actions of FSRC and its administrator Leroy King.  The Court has addressed this argument and held that in the absence of any showing of alter ego or manifest injustice, the FSIA does not permit the attribution of the acts of state agencies to the state itself.  *See* Frank Order at 9–10.  OSIC does not attempt to demonstrate alter ego or manifest injustice.  Accordingly, any causes of action based exclusively on the conduct of FSRC and Leroy King must be dismissed.  OSIC does, however, plead potentially actionable conduct on the part of Antigua itself, which occurred outside the United States.  *See, e.g.*, Orig. Compl. ¶ 81 (Prime Minister of Antigua appointing Stanford to head a regulatory board).  Thus, the Court moves to determine whether Antigua's "acts" supporting OSIC's claims took place "in connection with" a commercial activity.

***2. Antigua's Acts Were Taken In Connection With Commercial Activities.*** – The Court first distinguishes between OSIC's TUFTA claims, which arise directly from Antigua's receipt of loans from Stanford, and OSIC's tort claims, which are based on Antigua's various acts in support of Stanford's scheme.  As to the TUFTA claims, there can be no doubt that the acts on which the claims are based took place in connection with commercial activities.  The acts supporting OSIC's TUFTA claims are simply Antigua's acceptance of loans from Stanford.  Antigua admits that OSIC's loan-based claims, which it defines to include TUFTA avoidance claims, are based on commercial activities.  *See* Def.'s Reply 4 & n.5 [21] (acknowledging that avoidance claims are based on commercial

activities, but asserting other grounds for dismissal). Thus, as to OSIC's TUFTA claims, the "in connection with" requirement is clearly satisfied.

Although the question is closer as to OSIC's tort claims, the result is nevertheless the same. OSIC's theory of how Antigua's acts in furtherance of Stanford's scheme occurred in connection with commercial activities is identical to plaintiffs' theory asserted in *Frank*. Specifically, OSIC alleges that all of the acts Antigua took in furtherance of Stanford's scheme were in return for Stanford's continued provision of loans and other financial assistance. In the Frank Order, the Court concluded that there was a sufficient nexus between Antigua's receipt of loans from Stanford and its facilitation of Stanford's scheme to conclude that a quid pro quo relationship existed. *See* Frank Order 10–12. Based on the quid pro quo arrangement, the Court concluded that Antigua's acts in furtherance of Stanford's scheme were "in connection with" their commercial activities (the receipt of loans from Stanford). *Id.* at 12. Given the substantial similarity between plaintiffs' theory in the *Frank* Case and OSIC's theory here, the Court here concludes that Antigua's alleged acts in furtherance of Stanford's scheme were "in connection with" their commercial activities.

Having concluded that both OSIC's TUFTA claims and its tort claims are based on conduct that took place "in connection with" Antigua's commercial activities outside the United States, the Court turns to consideration of whether that conduct had a "direct effect" in the United States.

***3. Antigua's Conduct Had a Direct Effect in the United States.*** – "[A]n effect is 'direct' if it follows 'as an immediate consequence of the defendant's . . . activity.'"

*Weltover, Inc.*, 504 U.S. at 618 (alteration in original) (quoting *Weltover, Inc. v. Republic of Argentina*, 941 F.2d 145, 152 (2d Cir. 1991)).  The Supreme Court has "reject[ed] the suggestion that § 1605(a)(2) contains any unexpressed requirement of 'substantiality' or 'foreseeability.'"  *Id.*  However, the effects in the United States must be more than "trivial." *Id.*  The Court again analyzes separately OSIC's TUFTA claims, and its tort claims.

As to the TUFTA claims, Antigua's acceptance of loans from Stanford had a direct effect in the United States.  As this Court has repeatedly recognized, the Stanford Ponzi scheme was based and operated out of Houston, Texas.  *See, e.g.*, *Janvey v. Alguire*, 2013 WL 2451738, at *2–3 (N.D. Tex. 2013) ("Thus, although Stanford Entities were located nationally and internationally, the Court finds that, when aggregated, those entities were headquartered in Houston, Texas.").  By accepting loans from Stanford, Antigua was promising repayment to a Texas-based entity.  The Fifth Circuit has held that a foreign state's failure to render payment in the United States to an American company has a direct effect in the United States.  *See Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 896 (5th Cir. 1998).  While OSIC does not plead the place of repayment as to each of the alleged loans Stanford provided to Antigua, the Court finds Stanford's operational base in Houston sufficient to conclude that failure to repay Stanford and his entities had a direct

effect in the United States.[4] The commercial activities exception thus applies to OSIC's claims for recovery of fraudulent transfers.

As to OSIC's tort claims, the Court also concludes Antigua's acts in furtherance of Stanford's scheme had a direct effect in the United States. In the Frank Order, the Court determined that Antigua's alleged knowing and material support of Stanford's fraud directly resulted in the plaintiffs' lost investments. *See* Frank Order 12–14. For the reasons more fully discussed in *Frank*, the Court here concludes that Antigua's actions in furtherance of Stanford's scheme had a direct effect in the United States. *Id.* Having determined that the Court has jurisdiction over all of OSIC's claims under the FSIA, the Court moves to consideration of Antigua's Rule 12(b)(6) arguments.

### III. ANTIGUA'S RULE 12(b)(6) MOTION

#### A. Rule 12(b)(6) Legal Standard

When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[4] At the very least, OSIC provides evidence that repayment on the $40 Million Loan and the $31 Million Loan was to be made in the United States. *See* Pl.'s Resp. Mot. Dismiss 14; Pl.'s App. 27, 32, 39, 56. Antigua's alleged receipt of those loans thus unquestionably had a "direct effect" in the United States. *See Voest-Alpine Trading*, 142 F.3d at 896.

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

### B. The Court Grants Antigua's Rule 12(b)(6) Motion in Part

Antigua argues that (1) OSIC fails to plead scienter as to certain tort claims; (2) various claims are time barred; and (3) OSIC lacks standing to bring contract-based claims. The Court addresses each ground for dismissal in turn.

***1. OSIC Adequately Pleads Scienter.*** – Antigua argues OSIC fails to sufficiently allege scienter as to its claims for aiding and abetting fraud, aiding and abetting breach of fiduciary duty, civil conspiracy, and aiding and abetting violations of the Texas Securities Act. However, OSIC alleges in significant detail the lengths to which Antigua went to maintain its financing relationship with Stanford, including the various positions of power into which Allen Stanford was appointed. *See, e.g.*, Compl. ¶ 65 (appointing Stanford as chairman of a hospital board in return for loan used to construct the hospital). Antigua's conduct came under scrutiny from the U.S. government itself, which criticized the apparent

impropriety in Stanford's relationship with Antigua.  *See id.* ¶ 70.  OSIC has also alleged the ways in which Stanford was repaid with influence over Antigua's financial sector.  *See, e.g.*, *id.* ¶ 81.  In sum, the Court finds the complaint sets forth in sufficient detail facts that support the reasonable inference Antigua was, at a minimum, aware of Stanford's misconduct.  OSIC adequately alleges the requisite scienter to support its tort claims.[5]

***2. OSIC's Claims for Breach of Contract, Anticipatory Breach of Contract, Section 24.005(a)(1) TUFTA, and Aiding and Abetting TSA Are Not Time Barred.*** – The statute of limitations applicable to claims for breach of contract and anticipatory breach of contract is four years.  TEX. CIV. PRAC. & REM. CODE ANN. § 16.004.  Antigua asserts these claims accrued at the time the relevant loans were disbursed from Stanford to Antigua.  *See* Def.'s Mot. Dismiss 20.

Contrary to Antigua's argument, the Fifth Circuit has held, and this Court has repeatedly recognized, that Stanford's conduct was inherently undiscoverable until, at earliest, the date of the Receiver's appointment on February 16, 2009.  *See, e.g.*, *Democratic Senatorial Campaign Comm.*, 712 F.3d at 196–97.  Moreover, OSIC has pled the discovery rule, which tolls the statute of limitations for inherently undiscoverable claims until the

---

[5]Antigua also presses the related argument that government entities can not form the requisite scienter to be held liable for OSIC's tort claims.  *See* Def.'s Mot. Dismiss 19 (citing *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404–05 (9th Cir. 1991); *Dale v. Colagiovanni*, 337 F. Supp. 2d 825, 842 (S.D. Miss. 2004)).  The Court rejected this argument in the Frank Order, finding Antigua had failed to connect the rationale at play in *Lancaster*'s RICO claims to the plaintiffs' tort claims.  *See* Frank Order 16–17.  For the same reasons, the Court declines to grant dismissal on that basis here.

plaintiff could have reasonably discovered the claim. *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006). Given that Stanford's inner workings were completely hidden from outsiders, including the Receiver and OSIC, the Court finds an adequate basis at this stage for application of the discovery rule. OSIC filed this action within four years of the date the Receiver was appointed. *See* Compl. [1]. Accordingly, the Court denies Antigua's motion to dismiss OSIC's breach of contract and anticipatory breach of contract claims for untimeliness.

TUFTA claims under section 24.005(a)(1)[6] must be brought "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." TEX. BUS. & COM. CODE ANN. § 24.010(a)(1). As to OSIC's claims under section 24.005(a)(1), which is subject to a built-in discovery rule, this Court has been reluctant to dismiss claims based on limitations at the motion to dismiss stage. *See, e.g.*, Order, Dec. 5, 2014 15–16 [64], *in Janvey v. Willis of Colorado Inc.*, Civil Action No. 3:13-CV-3980-N (N.D. Tex. filed Oct. 1, 2013). Thus, because resolution of the limitations defense requires consideration of factual questions, the Court denies Antigua's motion to dismiss OSIC's section 24.005(a)(1) TUFTA claims.

---

[6]OSIC brings TUFTA claims under sections 24.005(a)(1), 24.005(a)(2), and 24.006(a). This Order refers to claims brought under sections 24.005(a)(2) and 24.006(a) as "Constructive TUFTA Claims."

Finally, Antigua argues OSIC's aiding and abetting TSA claims are time barred. Antigua cites only to the TSA's built-in discovery rule, which requires a plaintiff to bring a TSA claim no "more than three years after discovery of the untruth or omission, or after discovery should have been made by the exercise of reasonable diligence . . . ." TEX. CIV. STAT. ANN. art. 581-33H(3)(a). This statutory provision on its face requires determination of the factual question of when a plaintiff "should have" discovered a violation. Accordingly, the Court declines to dismiss the claim based on limitations at this stage.

***3. OSIC's Constructive TUFTA Claims Are Time Barred.*** – OSIC cannot use the discovery rule to preserve its TUFTA claims under sections 24.005(a)(2) and 24.006(a), however. Constructive TUFTA Claims must be brought "within four years after the transfer was made or the obligation was incurred. . . ." TEX. BUS. & COM. CODE ANN. § 24.010(a)(2). Thus, sections 24.005(a)(2) and 24.006(a) do not provide for tolling, and are interpreted as statutes of repose, rendering other equitable tolling mechanisms inapplicable. *See Nathan v. Washington*, 408 S.W.3d 870, 874 (Tex. 2013) (concluding that section 24.010 is a statute of repose, not a statute of limitations); *Methodist Healthcare Sys. of San Antonio, Ltd., L.L.P. v. Rankin*, 307 S.W.3d 283, 286 (Tex. 2010) ("[A] statute of repose is not subject to judicially crafted rules of tolling or deferral."). In response, OSIC argues *American Pipe* tolling preserves its claims.

*American Pipe* tolling is a tolling rule read into Rule 23 under which "the commencement of a class action suspends the applicable statute of limitations as to all

asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974). However, the Fifth Circuit has interpreted Texas law to preclude application of *American Pipe* tolling to subsequent state-law claims based on a previously filed federal class action. *See Newby v. Enron Corp.*, 542 F.3d 463, 471–72 (5th Cir. 2008). Here, OSIC asserts *American Pipe* tolling applies based on a federal class action brought in this Court in 2009. *See Frank v. Commonwealth of Antigua & Barbuda*, Civil Action No. 3:09-CV-2165-N (N.D. Tex. filed Nov. 13, 2009). Thus, under *Newby*, OSIC's purported membership in the *Frank* class does nothing to toll its state law causes of action based on TUFTA. Accordingly, the Court dismisses all section 24.005(a)(2) and 24.006(a) TUFTA claims based on transfers that took place prior to February 15, 2009, four years prior to the date OSIC brought this action.

***4. OSIC Has Standing to Bring Its Loan-Based Claims.*** – Antigua asserts that OSIC lacks standing to assert claims based on loans issued by the Bank of Antigua ("BOA"), a Stanford Entity bank that was seized by Antigua. *See* Def.'s Mot. Dismiss 21–22; Compl. ¶¶ 76–78. According to Antigua, to the extent OSIC brings claims on behalf of the Receiver, its standing is limited to claims held by the entities in receivership. *See Democratic Senatorial Campaign Comm.*, 712 F.3d at 190. Because BOA is no longer a Stanford entity, Antigua argues claims based on loans issued by BOA no longer belong to the Stanford receivership.

Antigua's argument ignores this Court's assumption of exclusive jurisdiction over the Stanford entities. *See* Receivership Order at 1; Order 50, July 30, 2012 [176], *in In re Stanford Int'l Bank Ltd. Debtor in a Foreign Proceeding*, Civil Action No. 3:09-CV-0721-N (N.D. Tex. filed Apr. 20, 2009) (recognizing that Bank of Antigua was a Stanford entity only nominally headquartered in Antigua). Moreover, OSIC has alleged that Antigua's seizure of BOA was fraudulent and unlawful. Pursuant to this Court's exclusive jurisdiction over the Stanford entities and OSIC's allegation that Antigua's seizure of BOA was unlawful, OSIC has sufficiently alleged it has standing on behalf of the Receiver to assert claims for BOA.

Antigua claims that this line of argument itself requires consideration of the FSIA immunity issues at stake in *OSIC v. Eastern Caribbean Central Bank*, Civil Action No. 3:13-CV-0762-N (N.D. Tex. filed Feb. 15, 2013) (the "BOA Action"). Antigua argues that unless this Court has jurisdiction under FSIA to hear the expropriation claims at issue in the BOA Action, it lacks jurisdiction in this action to consider whether Antigua's seizure of BOA was wrongful. The Court disagrees. Whether Antigua's seizure of BOA constituted commercial activity, subjecting it to claims based on that seizure, is a separate question from the issues at stake here. Here, OSIC does not attempt to hold Antigua liable for its seizure of BOA. It seeks to ignore Antigua's seizure of BOA so that it can assert fraudulent transfer claims that rightfully belong to BOA, a Stanford entity. Whether the Court can hear claims for recovery based on the seizure itself will be determined separately in the BOA Action. But

the Court need not have jurisdiction over claims based on BOA's seizure to hold the Receivership and its assignees have standing to assert claims that belong to a Stanford entity. The Court thus denies Antigua's motion to dismiss for lack of standing.

### CONCLUSION

The Court dismisses as time barred all constructive fraudulent transfer claims based on alleged transfers that occurred before February 15, 2009. Because these claims are barred by an absolute statute of repose, the Court dismisses them with prejudice. The Court denies Antigua's motion to dismiss in all other regards.

Signed July 15, 2015.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 19